We move to the fourth case this morning, U.S. v. Palladinetti. Mr. Zinger. Yes. You may proceed. Thank you, Your Honor. May it please the court. The essence of this case is actually very, very simple. The question is whether the mortgagee, which I will define as WMBFA, AFA, Washington Mutual Bank, FA, a federal association, the question is whether they are insured, whether they're an insured entity by the FDIC. Without FDIC coverage, there's no federal jurisdiction, and the convictions must be vacated. Let us start with what we know for sure. WMBFA, AFA, was the mortgagee in this case. We know this because the government in trial exhibit number one tells us that. The mortgagee was not Washington Mutual Bank. The mortgagee was not Washington Mutual Bank. WMBFA, AFA, should have been the focus of the government's case in chief. It should have been the focus of the briefs that was submitted to this court. And to say that they did not address this, the government did not address this, is a gross understatement. In their brief, they don't even mention WMBFA, AFA. They only assert that WMB and WMBFA were insured. But that proposition is totally irrelevant, and we'll get to that later. Government's primary witnesses in this case don't even come close to establishing that the mortgagee, WMBFA, AFA, is an entity that is insured. In fact, neither Mr. Hellstrom, who admittedly was a low-level, non-management, former employee of WMB, nor Mr. Lombardo, an FDIC case manager, ever even mentioned the mortgagee, WMBFA, AFA. Closest they came to mentioning it was when Mr. Hellstrom offered the unsupported and unsupportable proposition and speculation that FA stands for Federal Association. However, this type of speculative guess does not even approach beyond the reasonable doubt that it's required. Now, someone did decide to name a banking institution WMBFA, a Federal Association, but Hellstrom testified that he was not aware of all the entities throughout the bank and was not privy to management decisions at WMB. We would submit to this honorable court that that testimony, that he was not aware of the entity and that he was not privy to management decisions, is the fatal flaw in the government's case. Mr. Lombardo similarly failed to connect WMBFA, AFA to any FDIC-insured entity. He testified that WMB and WMBFA were, in fact, insured, but he never mentioned the mortgagee, WMBFA, AFA. He did testify that funds were dispersed by WMBFA, AFA, or that they came from WMB or WMBFA, or that WMBFA, AFA was a subsidiary, an alter ego, or under the control of WMB or WMBFA. And all of the government witnesses and all of the exhibits in the case also failed to establish any of these propositions. In fact, in one of the trial exhibits at 10K filed by the WMB with the Securities and Exchange Commission, identified WMB and WMBFA as either Federal Savings Banks or Federal Savings Association, not as a federal association. In addition, we can put the issue to rest with the FDIC's own website, which this court must take judicial notice of the government's official website. And that was the ruling in the case from this circuit in Nunez versus Dunlap in 2003. The FDIC maintains a bank find website that lists all insured entities. And our exhibit number six shows that WMBFA, AFA is not now nor has ever been an insured bank. And if it's not there, there is no federal jurisdiction. Bank fraud statutes simply do not apply. In addition, any similarity in the names of the banking institutions does not help the government's case. Case after case, across virtually all the circuits, reach the same conclusion. We rely heavily upon the case of the United States versus Alexander, 679, Bed 3rd, 721, an eighth circuit case, which is strikingly identical to our case. In Alexander, false statements were used to procure a loan from Bank of America, N.A. The defendant also wrote a letter to the Bank of America mortgage. And if the court will indulge me for a moment, I would like to briefly quote from the case, which is at page 728. Quote, in contrast, the evidence presented in this case does not show how the three different entities are structured or how funds were dispersed. No evidence was offered to show that the mortgage financed by Bank of America, N.A., was actually financed by funds from the Bank of America. The witnesses called by the government were low-level employees, none of whom were shown to be qualified to testify about the corporate structure of the different entities. The fact that employees use the terms Bank of America or Bank of America, N.A., or Bank of America mortgage interchangeably in their testimony and on internal correspondence does not establish that the entities are one and the same. Facts here, aren't the facts here quite different? When you, when you take a look at the three certificates of insurance and you combine it with the testimony, I think Alexander becomes a quite different situation. Thank you. Well, that's not a, that observation doesn't, that hurts your client, doesn't help him. Yes, I understand. It's our position that a corporate, professional corporate person who has qualified as a witness must testify clearly as to the structure of the alter ego status of the entities. And that's what I got out of Alexander that there are basically two ways to prove this. One is to show that the mortgagee is an FDIC-insured entity or to show through competent testimony that the alter ego status in fact exists. And in this case, there is no such testimony as to the first issue. And there is also no such testimony as to the second issue. And that, I believe, is the— I'm going to ask Mr. Smith to tie this up, that he's going to, maybe I'll be mistaken, but my sense is he's going to want to talk about government exhibits one, two, and three, and what they show in combination. What's, what, what do you think they, what's lacking from the combination of government exhibits one, two, and three? Well, what's lacking in the appellant's view is a witness who can tie it all up and testify what the actual relationship is and clearly define the relationship between the entities to show that the mortgagee is an FDIC-entitled entity. So to prevail, though, don't you have to, you have to establish, I understand this was a bench trial, but that no rational district judge or district court could interpret exhibits one, two, and three as showing continuity of insurance that covers the institution named in the mortgage paperwork. And that's a heavy burden. Yes, but I do believe it has to be supported by expert witness testimony from a corporate employee. Corporate documents are insufficient as a matter of law? Well, I don't think we can with certainty prove beyond a reasonable doubt the nature of the FDIC insurance. That's our position. Thank you. Thank you. And as Alexander says, without this evidence, without the primary evidence of the mortgagee being self-FDIC insured, you must go to the second prong, and it must be supported by competent evidence by a competent corporate employee. So that's our position, and that's why we would request that the convictions be vacated. Thank you for your time. Thank you, counsel. Mr. Ortega. Thank you. May it please the court, Alejandro Ortega on behalf of the United States. Your honors, the district court, as a fact finder at Mr. Palazinetti's bench trial, rationally found that based on ample evidence, the lender in this case, Washington Mutual Bank, was an FDIC insured financial institution at the time of the offense conduct. The government introduced and the district court rationally and reasonably credited testimony and evidence, which included exhibits one through three FDIC certificates of insurance, which showed that Washington Mutual Bank had the same FDIC insurance number, 32633, from October 1, 1997 until September 23, 2005, which time period encompasses the time of the alleged conduct. An FDIC employee testified that according to FDIC records, there was no break in the FDIC bank's Washington Mutual Bank did indeed change its name in 2005 to drop the F-A, the letters F-A, after its name, which one of the witnesses at trial testified stands for Federal Association. But this did not alter Washington Mutual Bank's insured status. It was a single legal entity with a single FDIC number, even though the last letters F-A were dropped. This was demonstrated by documents such as an SEC 10-K, which explained that the F-A entity merged into Washington Mutual Bank, but that both subsidiaries were FDIC insured. Further, documents from the Office of Thrift Supervision also documented this name change from Washington Mutual Bank F-A to simply Washington Mutual Bank, including the formal certificate of succession and interest. In short, Your Honors, the FDICs and the bank's perspective, from the FDICs and the bank's perspective, excuse me, there was only ever one entity and that entity was always federally insured, including, and so unless the panel has further questions for me, the government would respectfully ask Your Honors to affirm the conviction of this case. Thank you, Counsel. I don't believe you had any additional time, Mr. Jinger. Thank you, Your Honor. I appreciate it. The case will be taken under advisement.